**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**RANDY EDWARDS, INDIVIDUALLY,
AND ON BEHALF OF THE ESTATE OF
FRANCES I. EDWARDS, AND ON BEHALF
OF THE WRONGFUL DEATH BENEFICIARIES
OF FRANCES I. EDWARDS**                              **PLAINTIFF**

**v.**                                            **CIVIL ACTION NO. 2:19-CV-00025-KS-MTP**

**BELK DEPARTMENT STORES LP;
BELK STORES OF MISSISSIPPI, LLC;
And JOHN DOES 1-10**                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This cause comes before the Court on Defendants' Motion for Summary Judgment [63] filed February 28, 2020. Plaintiff has responded [75], and Defendants replied [94]. Having reviewed the parties' submissions, the summary judgment evidence in this case, and the relevant legal authorities, and otherwise being fully advised in the premises, the Court finds, because there exists no genuine issue of material fact on various elements of this premises liability claim, the motion will be granted.

**I. BACKGROUND**

This case arises from a fall that Ms. Frances Edwards had at a Belk store in Laurel, Mississippi on September 22, 2018. [9] at ¶ 6. Ms. Edwards filed suit against Defendants, Belk Department Stores, LP and Belk Stores of Mississippi, LLC (collectively referred to herein as "Belk") on January 24, 2019 in the Circuit Court of Jones County, Mississippi. [1-2]. On February 15, 2019, Belk removed the action to this Court. [1]. On March 9, 2020, Ms. Edwards passed away. [6]. Plaintiff's son, Randy Edwards, was substituted as Plaintiff, and an Amended Complaint was filed on March 29, 2020. [8], [9].

The Amended Complaint alleges that Ms. Edwards entered the vestibule of the store through one of the conventional doors. [9] at ¶ 6. Upon entering through the door, it "abruptly, forcefully, and without warning struck Ms. Edwards from behind as it rapidly closed." *Id*. at ¶ 7. "She was knocked forward to the ground in the vestibule, falling hard on her left side, and hitting her head on the concrete floor to the left of the carpeted pathway." *Id*.  Belk now moves for summary judgment on the issue of liability.

## II. DISCUSSION

### A. Legal Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). The moving party bears the initial burden of showing there is no genuine issue for trial, and it may do so by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992) (quoting *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 301 (5th Cir. 1990)).

If the moving party meets this burden, the nonmoving party who will have the burden of proof at trial must go beyond the pleadings and come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). The nonmovant's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Stout v. Vincent*, 717 F. App'x 468, 470–71 (5th Cir. 2018) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Summary judgment is mandatory "against a party

2

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc*., 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322).

### B. Applicable Law

The Court begins this section with the observation that both parties agree that this is a premises liability action. In fact, the first cause of action in the Amended Complaint is titled "Premises Liability." [9] at ¶¶ 12-13; [75] at p. 6. The parties also appear to agree on the law to be applied.

As Plaintiff notes, "Premises liability is a 'theory of negligence that establishes the duty owed to someone injured on a landowner's premises as a result of 'conditions or activities' on the land . . . .'" [75] at p. 5 (quoting *Johnson v. Goodson*, 267 So. 3d 774, 777 (Miss. 2019)). There is also no dispute in this case that Ms. Edwards was an invitee on the Belk premises. In Mississippi, it is well-established that "[a] business owner or operator owes a duty to the invitee to keep its premises in a reasonably safe condition and to warn of dangerous conditions which are not readily apparent to the invitee." *Bonner v. Imperial Palace of Miss*., LLC, 117 So. 3d 678, 682 (Miss. Ct. App. 2013) (quoting *Drennan v. Kroger Co*., 672 So. 2d 1168, 11709 (Miss. 1996)). "Strict liability is not imposed on [business owners] in premises liability cases." *Martin v. Rankin Circle Apartments*, 941 So.2d 854, 864 (¶ 45) (Miss.Ct.App.2006) (citing *Corley v. Evans*, 835 So.2d 30, 41 (¶ 32) (Miss.2003)). Mere proof "of the occurrence of a fall on a floor within [the] business premises is insufficient to show negligence on the part of the proprietor." *Stanley v. Boyd Tunica, Inc*., 29 So. 3d 95, 97 (¶ 8) (Miss. Ct. App. 2010) (quoting *Byrne v. Wal–Mart Stores, Inc*., 877 So. 2d 462, 465 (¶ 6) (Miss. Ct. App. 2003)); *see also Day v. Ocean Springs Hosp. Sys*., 923 So. 2d 246, 250 (Miss. Ct. App. 2006).

As the Mississippi Supreme Court in *Anderson v. B. H. Acquisition, Inc*. stated,

> In Mississippi, an owner, occupant, or person in charge of a premises owes to an invitee or business visitor a duty to exercise ordinary care to keep the premises in a reasonably safe condition or to warn the invitee of dangerous conditions, not readily apparent, which the owner or occupier knows of or should know of in the exercise of reasonable care. When the dangerous condition is traceable to the proprietor's own negligence, no knowledge of its existence need by shown. However, the owner or occupant is not an insurer against all injuries. Where the presence of the dangerous condition is due to the act of a third party, it must be shown that the defendant had actual or constructive knowledge of its presence.

771 So. 2d 914, 918 (Miss. 2000) (internal quotations and citations omitted).

Thus, as the Mississippi Supreme Court had previously stated, in order to recover on a premises liability claim, a business invitee/plaintiff must prove one of three theories:

> the proprietor had actual knowledge of a dangerous condition, *or* the dangerous condition existed for a sufficient amount of time to establish constructive knowledge, in that the proprietor should have known of the condition, *or* the dangerous condition was created through a negligent act of a store's proprietor or his employees.

*Munford, Inc. v. Fleming,* 597 So. 2d 1282, 1284 (Miss. 1992); *see also Vu v. Clayton*, 765 So. 2d 1253, 1255 (Miss. 2000) (quoting *Downs v. Choo,* 656 So. 2d 84, 86 (Miss. 1995)); *Wilbanks v. Hickman*, 198 So. 3d 393, 398 (Miss. Ct. App. 2016) (explaining that "to establish liability based on an undisclosed dangerous condition, [one] must show that [the defendant] had actual or constructive knowledge of the dangerous condition, or she created the dangerous condition"). Each of these three premises-liability claims "requires a showing of a dangerous condition; thus, a property owner cannot be found liable for the plaintiff's injury where no dangerous condition exists." *Chandler v. Mary Mahoney's, Inc.,* 126 So. 3d 972, 975 (Miss. Ct. App. 2013) (citing *Stanley*, 29 So. 3d at 97 (¶ 10)). Proof of the dangerous condition at the time of the accident must be shown. *See Ringo v. Wilson*, 204 So. 3d 827, 829 (Miss. Ct. App. 2016). "[T]here is no liability for injuries, where the condition is not dangerous . . ." *Tharp v. Bunge Corp*., 641 So. 2d 20, 23 (Miss. 1994).

**C. Analysis**

Belk brings its motion for summary judgment on the grounds that there is no evidence presented by Plaintiff that the door itself was defective that day. In other words, there is no evidence that a dangerous condition existed. [64] at p. 2. Even if there were some dangerous condition, Belk argues, there is no evidence that Belk caused it or knew it existed or that it existed long enough to impose constructive knowledge to Belk such that they had to correct it or warn about it. [64] at p. 9.[1]

### 1. Whether a Dangerous Condition Existed

The Amended Complaint in this case alleges, "There were no automatic doors on the premises, so [Ms. Edwards] chose one of the conventional doors. Ms. Edwards opened the door to pass through into the vestibule of the store." [9] at ¶ 6. Court finds that a manual door in and of itself is not an inherently dangerous condition, and Plaintiff cites to no case law for the proposition that it is. However, Plaintiff did allege more. " Upon entering through said door, the door abruptly, forcefully, and without warning struck Ms. Edwards from behind as it rapidly closed. She was knocked forward to the ground in the vestibule, falling hard on her left side, and hitting her head on the concrete floor to the left of the carpeted pathway." [9] at ¶ 7. While these alleged facts, if proven, could possibly show a possibly dangerous condition, these are but mere allegations. We have to look to the summary judgment evidence.

### a. Belk's Evidence to Show Lack of a Dangerous Condition

"[T]he party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323 and citing *Lujan*

---

[1] Belk also argues that Plaintiff cannot show causation between the fall and her death. [64] at p. 3-4. However, because the Court finds there is no liability for the incident, it need not address this argument.

5

*v. Nat'l Wildlife Federation*, 497 U.S. 871, 885-886 (1990)). "On summary judgment, the moving party is not required to present evidence proving the absence of a material fact issue; rather, the moving party may meet its burden by simply 'pointing to an absence of evidence to support the nonmoving party's case.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005) (quoting *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Here, Belk does both. It puts forth what it claims is the only evidence regarding the door itself, and argues that Plaintiff cannot prove that the door was in a dangerous condition.

Belk asserts, and Plaintiff does not refute with any evidence, that there were only two eyewitnesses to the accident, Ms. Edwards herself and Tina Jeffcoat[2]. Specifically with regard to Plaintiff's fall, Ms. Jeffcoat testified as follows:

> I had just turned the corner and we were headed to go out the doors and I seen [sic] this elderly lady coming through the door. . . . And I seen [sic] her open the door, and she was having trouble it looked like opening the door. But she had an umbrella in her hand as well. She got the door opened but not all the way, and she went to step through the opening and it looked like the umbrella may have hindered her from stepping all the way through. And it was also, like, the day had been windy and rainy, and it looked like the wind caught the door and hit her from behind. And when that happened, I seen her start stumbling to the left. I yelled out and started running to try to catch her, but she fell before I could get to her.

[63-3] 11:20-23; 12:16-13:2.

> It looked like [the umbrella] caught -- like, when she -- like, she didn't open the door all the way. You could tell she was having difficulty pulling the door open. So it didn't open like -- if I was to open it, I would open it all the way to walk through; she did not. And so when she got it open it wasn't -- I don't want to say narrow space, but she tried to get through it. And when she did, I mean, she had the purse; she had an umbrella. It looked like the umbrella caught on the door jam about the same time the wind caught the door and hit her.

[63-3] 13:12-23.

---

[2] Ms. Jeffcoat's granddaughters were with her, and may have seen something, but it appears that they were neither deposed nor gave any sworn statement, as there is nothing indicating either in the record.

Ms. Jeffcoat testified that she used the same door when she entered the store and that she had no problems opening the door. [63-3] 14:5-11; 15:3. When asked if she noticed anything, as a shopper, that was wrong with the door, she testified, "No." [63-3] 34:4-10.

Belk also points to the testimony of Mike Travis, Ms. Edwards' son-in-law to whom Ms. Edwards gave a present sense impression when he arrived on the scene. Travis testified as follows:

> I immediately rushed over. And she was laying in – not in front of the doorways, but off to the left of the doors.

[63-2] 22:18-22.

> I immediately went to her—and she told me that the door hit her and knocked her down.

[63-2] 23:3-6.

> Q: [b]eyond what you described that she said that the door hit her and knocked her down, did she say anything else about the door?
>
> A: No.

[63-2] 23:18-22.

> I immediately just went down to her and—and she was just telling me that the door hit her and knocked her off to the side.

[63-2] 24:15-17.

Belk also points out that Plaintiff's expert, Jimmy Halfacre, P.E., was not designated to testify that the door was in a defective state or that anything was wrong with the door. [64] at p. 3; [63-6][3].

Again, with a manual door not being inherently dangerous, the testimony presented by Belk shows only that the door hit Ms. Edwards—it does not establish a dangerous condition; thus, the

---

[3] This document is Plaintiff's expert designation, which states that Mr. Halfacre is "anticipated to testify regarding the standard of care as applicable to Belk Department Store under the circumstances as then existed on September 22, 2018." The designation goes on to state that Mr. Halfacre would opine about proper testing and inspection practices for doors/door closers. Finally, it states that Mr. Halfacre would testify that Belk did not have the appropriate policies and procedures in place to inspect, monitor or maintain the entryways of its premises in a safe manner. These opinions have nothing to do with the safety or condition of the door itself.

7

Court finds that Belk has met its burden on summary judgment to show that there is a lack of evidence as to one of the material elements of the Plaintiff's claim. Now Plaintiff must go beyond the pleadings and designate specific summary judgment evidence that creates a genuine issue of material fact for trial that a dangerous condition existed with the door at the time of Ms. Edwards' fall. *Boudreaux*, 402 F.3d at 540.

### b. Plaintiff's Evidence Showing a Dangerous Condition[4]

Although Plaintiff claims that there are genuine issues of material fact regarding the condition of the entrance door on Belk's premises, Plaintiff seems to take the dangerous condition of the door as a given. Plaintiff asserts, "There is no question that Ms. Edwards was an invitee on Defendants' premises and that she injured herself as a result of the door striking her from behind as she entered the building."[5] [75] at p. 6. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Plaintiff then states that the question becomes whether Defendant breached its duty to keep the premises in a reasonably safe condition. *Id*. But where is the *unsafe* condition? As Plaintiff points out, a defendant property owner "cannot be found liable where no dangerous condition exists." *Bonner*, 117 So. 3d at 682.

Plaintiff points to no evidence showing that the subject door was in an unsafe condition at the time Ms. Edwards passed through it. Plaintiff did submit certain repair reports, which were filed under seal. [93]. However, the repair reports are not used as evidence of the specific door working improperly that day, but rather evidence generally of the Belk's knowledge or awareness because Plaintiff claims, "It is abundantly clear from a thorough review of these DH Pace

---

[4] In response to the Motion for Summary Judgment, Plaintiff attached a multitude of medical records [75-1]-[75-6], which the Plaintiff does not refer to specifically and the Court finds irrelevant to the issue at hand.
[5] The fact that the door itself was not dangerous is reinforced by the testimony that the door hitting her caused her to fall, which caused her injuries. There is nothing to indicate that the door hit her with such force such that her injuries were a direct result of the door hitting her, rather than the fall.

documents that Defendants were aware of concerns relating to the door in question along with a host of other doors among the three separate entrances for several months prior to September 22, 2018." [75] at p. 6. Yet, the issue at present is not awareness, but rather the condition of the subject door on September 22, 2018. The testimony and other evidence in the record simply does not establish that the door was not working properly. Unfortunately for Plaintiff, in his initial response, he failed to specify any evidence as to the condition of the door that creates a genuine issue of fact that it was working improperly.[6]

In his supplemental response, Plaintiff argues that expert testimony as to the defectiveness of the door's condition should not be required because Plaintiff cannot prove that the door closing mechanism is defective due to the fact that no one has the mechanism.[7] To be clear, the Court is not granting summary judgment because Plaintiff's expert cannot opine about the defectiveness of the door. As Plaintiff urges, without expert testimony as to the condition of the door, the parties must present additional available evidence regarding the alleged dangerous condition of the door as it existed on September 22, 2018. [109] at pp. 3-4. This is true. The Court has looked at all of the evidence presented, but even in this second attempt to establish a genuine issue of fact, the only evidence Plaintiff submits, or even points out, is the signed statement from Ms. Edwards attached to the belatedly filed supplemental response.[8]

Ms. Edwards' statement still fails to raise a genuine issue of fact because it is not proper summary judgment evidence. First, it is hearsay. It is an out of court statement offered for the truth

---

[6] Plaintiff cites to no specific work order to establish that this particular door had "issues."

[7] Plaintiff makes a host of unsupported assertions about how it came to be that there is no door closing mechanism, including citing to Belk's designation of experts, which is not a part of the record. Notwithstanding, Belk concedes that months after the subject incident, Belk replaced the door closer on the subject door. [113] at p. 2.

[8] In the statement, Ms. Edwards claims that "[u]pon entering through said door, it abruptly, forcefully, and without warning struck me from behind as it rapidly closed." [109-2]. Despite Plaintiff's claim that Ms. Edwards made the same comments that same day to eyewitnesses and bystanders, *see* [109] at p. 4, Plaintiff has not pointed to any testimony or affidavits stating such.

of the matter asserted, and the Court finds there is no applicable exception. It is dated November 11, 2018, which almost a month and a half after the accident, and thus it is not a present sense impression,[9] nor can it be admitted as a recorded recollection.[10] Second, even if it were not hearsay, it is an unsworn statement, and thus, it is not competent summary judgment evidence because it does not comply with the requirements of Federal Rule of Civil Procedure 56(e). *See Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001) (citing *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305–07 (5th Cir.1988), which found that a notarized but unsworn affidavit was not competent summary judgment evidence)).

The cases cited by Plaintiff in the supplemental response are distinguishable. In *Pigg v. Express Hotel Partners, LLC*, a mirror hanging on the bathroom door fell, causing injury. 991 So. 2d 1197, 1199 (Miss. 2008). The plaintiff claimed that the loosely-attached mirror constituted a hidden, dangerous condition, and that the hotel either knew, or reasonably should have known, of the danger, but failed to warn of it. *Id*. at 1200. The plaintiff presented evidence of a dangerous condition in that the mirror simply fell due to its faulty attachment, and not because of her son slamming the door open or shut, based on evidence of the location of the glass on the floor. *Id*. There was also evidence of two loosely attached mirrors in adjacent rooms, which went to the issue of whether the hotel knew or should have known of the loosely attached mirror. *Id*.

In the *Pigg* case, mirrors should not simply fall and if they do and shatter, injury is likely to occur. Viewing the evidence of the glass in a light most favorable to the plaintiff, there was

---

[9] *See* Fed. R. Evid. 803(1) ("A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.") The time of the written statement is not proximate enough to qualify.
[10] *See* Fed. R. Evid. 803(5); *see also Payne v. Univ. of S. Mississippi*, No. 1:12-CV-41-KS-MTP, 2014 WL 1404732, at *5 (S.D. Miss. Apr. 10, 2014). In *Payne*, this Court explained that the purpose of a recorded recollection is to refresh the recollection of the witness who made or adopted the record. In *Payne*, as in this case, the declarant was deceased; thus, such document could not possibly be admitted to refresh Ms. Edwards' recollection. In addition, the proponent of the record must make a predicate showing that it is accurate and that the witness had insufficient recollection to enable him to testify fully and accurately at trial. *Id*. (citing *O'Malley v. United States Fid. & Guar. Co.*, 776 F.2d 494, 500 (5th Cir.1985) and *United States v. Judon*, 567 F.2d 1289, 1294 (5th Cir.1978))

enough evidence of a dangerous condition—a loosely hung mirror that could fall and shatter. Here, there is no circumstantial evidence from which to infer anything was wrong with the door. The testimony from Ms. Jeffcoat was that she found nothing wrong with the door; Ms. Edwards did not open the door all of the way; her umbrella hindered her from entering; and the door hit her in the rear. There is nothing to indicate that the door itself was not working properly. Similarly, unlike in *Pigg*, there is no evidence of any adjacent doors that were working improperly on that particular day such that it could imply, albeit a stretch, that the subject door was likely not functioning properly either.

Plaintiff also cites *Chandler v. Mary Mahoney's, Inc.*, 126 So. 3d 972 (Miss. Ct. App. 2013). In Chandler, a child suffered severe second-and third-degree burns from contact with a landscape light maintained on the premises. *Id*. at 973. The defendant moved for summary judgment, arguing that a landscape light set in a flower bed eight feet from the sidewalk did not constitute a dangerous condition. *Id*. at 974. The plaintiff argued in response that there was an issue of fact that the defendant created a dangerous condition, the presence of a landscape light capable of causing second and third degree burns. *Id*. The trial court had excluded an expert report and found that without such testimony, there was nothing in the record "to indicate that the light was unduly hot, that it was improperly mounted, or that there was anything else wrong with the light or its placement." *Id*. at 975. However, the appellate court found that there was undisputed evidence that the plaintiff was an invitee, the landscape light was installed and maintained by the defendant, and the plaintiff's son fell on or near the landscape light and sustained severe second- and third-degree burns to his leg. That was sufficient to create an issue of fact that *the light itself* was a dangerous condition and that the dangerous condition caused the injuries. *Id*. at 975 Here, the facts are distinguishable, as the *door itself* did not cause the injury, rather the door may have

11

caused a fall, which caused the injury, and there is no other evidence to support the fact that the door itself was not working.

Based on all of the record evidence submitted and addressed by the parties, the Court finds that Plaintiff has failed to carry his burden to raise a genuine issue of material fact regarding the dangerous condition of the door on September 18, 2018.[11] Therefore, summary judgment is warranted. However, lest there be any question, the Court will go on to address the additional elements that Plaintiff must prove in a premises liability claim to determine whether summary judgment would be warranted even if a dangerous condition were present.

### 2. Whether Belk Caused a Dangerous Condition

Assuming the door was in a dangerous condition, i.e., malfunctioning in some way, one way that Plaintiff can establish liability is to show that Belk's actions caused the dangerous condition. Plaintiff does not argue that a Belk employee actually caused the door to not work properly. Rather, Plaintiff argues that Belk had a duty to keep the premises in a reasonably safe condition but fails to articulate a specific theory of how it breached such a duty. Plaintiff merely states that "Defendant's failure to do so was the direct and proximate cause of Ms. Edwards' subsequent injuries." [75] at p. 5. Again, this type of conclusory argument is insufficient on summary judgment.  Plaintiff has presented no evidence that Belk did anything to cause the door to function improperly. Therefore, any claim on such a theory fails.

---

[11] Plaintiff also argues in the supplemental response that "Plaintiff has presented substantial evidence of notice Defendant Belk had of malfunctioning door closers, even on that specific door, both prior to and after the date of Ms. Edward's injury, which was previously submitted for the court's review under seal." [109] at p. 4. Such a statement is not sufficient in response to a summary judgment. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998). Neither in his initial response, nor in the supplemental response, does Plaintiff point the Court to any particular page of the document under seal or even reference any particular repair report by date or subject matter to substantiate his position.

### 3. Whether Belk Had Actual or Constructive Knowledge of a Dangerous Condition

#### a. No evidence of Belk's actual knowledge of dangerous condition

Again assuming that the door was not functioning properly and caused Ms. Edwards' fall, Plaintiff could establish liability by showing that Belk actually knew that the door was not functioning properly that day and failed to repair it or warn the plaintiff. *Haggard v. Wal-Mart Stores, Inc.*, 75 So. 3d 1120, 1125 (Miss. Ct. App. 2011). As noted earlier, Plaintiff appears to rely on the repair reports submitted under seal. Unfortunately, Plaintiff again fails to meet its burden. Plaintiff fails to direct the Court's attention to any particular repair report that would show that the door at issue here, which seems to be the left outside entrance door coming into the vestibule in the "Better Department,"[12] was not working properly on the day of the incident and that Belk knew it. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir. 1992)).  Notwithstanding, the Court by its own review could find no evidence that that particular door was not working on September 22, 2018. The Court did find, however, assuming the door referred to in the documents is the subject door in the Better Department,[13] evidence that approximately two months prior, on July 15, 2018, a request was made for a new closure, and the work was completed on July 27, 2018. [93] at p. 14.[14]

---

[12] While neither party has made clear exactly what door Ms. Edwards entered through, the Court has gleaned that it was the outside door, on the left hand side, entering into the vestibule in the "Better Department." [75-8] 12:6-12; [63-3] 14:16-20.

[13] Again, the Court has gleaned that the subject door was the outside left door when standing on the exterior, facing the store. [63-3] 14:16-20. It is uncertain whether the door in the work order is the subject door, as it is described as "Exterior Standing inside the Better Dept. Entrance looking out, the left inside, left set, and left door need a closure . . . ." [93] at p. 14.

[14] Plaintiff argues that work orders dated after the incident indicate that Belk requested urgent repairs because customers could be injured and that a sign was posted on the door in question after the incident. [75] at p. 7. The Court finds that any work orders or signs posted dated after the date of the accident are irrelevant as to Belk's knowledge of the condition of the door at the time of the incident and likely inadmissible under Federal Rule of Evidence 407.

Although there are allegations in the Amended Complaint that "Belk was aware of other patrons being injured by this door, that the door was a hazard to its patrons, and Belk had not repaired the door prior to the incident and injury to Mrs. Edwards,"[15] there is simply no evidence submitted to support them. The Court finds that any theory of liability based on Belk's actual knowledge fails.

### b. No evidence of Belk's constructive knowledge of dangerous condition

As for constructive knowledge, Plaintiff must provide proof that the condition "existed for such a length of time that the operator, through the exercise of reasonable care, should have known of its existence." *Almond v. Flying J Gas Co.*, 957 So. 2d 437, 439 (Miss. Ct. App. 2007) (citing *Munford*, 597 So. 2d at 1284). The Court "will not indulge in presumptions for the deficiencies in plaintiff's evidence as to the length of time the hazard existed, therefore, the plaintiff must produce admissible evidence as to the time period in order to establish the operator's constructive knowledge." *Id.* (citing *Waller v. Dixieland Food Stores, Inc.*, 492 So.2d 283, 286 (Miss.1986)). There must be specific proof as to the relevant actual length of time. *Id.* (citing *Dickens v. Wal–Mart Stores*, 841 F. Supp. 768, 771 (S.D. Miss. 1994)).

Here, Plaintiff again refers to repair tickets and the testimony of Eric Bass, the manager of Belk's store in Laurel where the incident occurred. [75] at pp. 6-7. The Court finds that the repair tickets and testimony establishes only that there were tickets for repairs to other doors at various times[16] and that Belk had general knowledge that some of the doors would sometimes "close a little faster than [they] should." [75-8] 23:7-24:2.[17] Plaintiff urges that Bass personally witnessed some of the doors closing too quickly prior to the incident in question. However, the testimony

---

[15] [9] at ¶ 13.
[16] As noted previously, the one repair request in closest proximity that preceded the incident was completed.
[17] Plaintiff claims this is "the very same thing that Ms. Edwards stated happened to the door she entered the store through." [75] at p. 7. However, as the Court has pointed out, there is no summary judgment evidence establishing such.

14

cited fails to establish that the particular door through which Ms. Edwards entered ever closed too quickly, and if it did, how long it had been doing so. Showing that Belk had general knowledge that door closers would wear out and were replaced does not satisfy Plaintiff's burden. This argument is similar to a "mode of operation" theory of liability,[18] which Mississippi has expressly rejected. *See Byrne v. Wal-mart Stores, Inc.*, 877 So. 2d 462, 467 (Miss. Ct. App. 2003); *Sullivan v. Skate Zone, Inc.*, 946 So. 2d 828, 832 (Miss. Ct. App. 2007).

As Belk points out, such a theory of liability would up-end premises liability by allowing Belk to be liable for simply knowing that a dangerous condition *could occur*. That is not the law in Mississippi, and Plaintiff has failed to show that any dangerous condition with the subject door lasted for a sufficient amount of time to put Belk on notice. Any evidence or potential testimony relating to the reasonableness or appropriateness of inspections is moot if there is no evidence that the dangerous condition existed long enough for an inspection to have caught it.[19]

**III. CONCLUSION**

"Summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075–76 (5th Cir. 1994) (quoting *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir.1993)). We will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts," and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir.

---

[18] Under such a theory, "when an owner of a self-service establishment has actual notice that his mode of operation creates certain risks of harm to customers, and those risks are foreseeable, it is not necessary for the plaintiff to prove notice of the hazard that caused the injury." *Sullivan*, 946 So. 2d at 832.

[19] Belk argues that Plaintiff is trying to establish general negligence essentially through a negligent inspection theory. [94] at p. 4, 6. While that may appear to be the case, such a theory was never plead in the Complaint, and Plaintiff concedes that premises liability law governs the issues.

2005). The evidence presented by Plaintiff fails to raise a genuine issue of material fact as to the dangerous condition of the door itself. There is no evidence which shows, or by which a jury could reasonably infer, that a dangerous condition existed with the door when Ms. Edwards passed through it. In addition, assuming for purposes of summary judgment that the subject door was indeed not working properly, Plaintiff fails to present any evidence raising an issue of fact as to either Belk's knowledge that the subject door was not working on the date of the accident or that the dangerous condition existed for such a length of time to impute constructive knowledge to Belk.  Therefore, summary judgment is appropriate.

Accordingly, it is hereby ORDERED that Belk Department Stores LP's Motion for Summary Judgment is GRANTED.  The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58. All remaining pending motions are deemed moot.

SO ORDERED and ADJUDGED this the 16th day of June 2020.

/s/ Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT COURT JUDGE